IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GINA N. DEL TINTO,

       Plaintiff,                     12cv0070
                                                 **ELECTRONICALLY FILED**

       v.

CLUBCOM, LLC,

       Defendant.

**MEMORANDUM OPINION**

Before the Court is the Defendants' collective Motion for Summary Judgment in this case wherein Plaintiff sued her former employer and under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12101 *et seq*.[1]  Doc. No. 36.  Defendants' Brief in Support of the Summary Judgment Motion sets forth several reasons why Judgment should be entered in favor of Defendants.  Doc. No. 39.   Plaintiff filed a Brief in Opposition to the Motion (doc. no. 44) and Defendant filed a Reply to Plaintiff's Opposition.  Doc. No. 58.  The matter is now ripe for disposition.

**I. Standard of Review**

A Court must grant summary judgment, "if the movant shows that there is no genuine dispute as to any material fact and [if] the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a).  This determination requires that we view the facts in the light most

---

[1] Plaintiff's Complaint (doc. no. 1) referenced the ADA.  The enactment of the Americans with Disabilities Act Amendment Act expanded coverage of the ADA and is often referred to by the acronym, "ADAAA."  In reaching its decision in this matter, the Court has utilized statutory and case law which post-dates the enactment of the ADAAA, but will refer to Plaintiff's claim as one made under the ADA for simplicity.

favorable to the nonmovant and draw all inferences in her favor.  *Stratechuck v. Bd. of Educ., S. Orange–Maplewood Sch. Dist.*, 587 F.3d 597, 603 (3d Cir. 2009).

A fact is material if it "might affect the outcome of the suit under the governing law," and the dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Olivieri v. County of Bucks*, 2012 WL 5235684, *4 (3d Cir. 2012), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has properly supported its showing that there is no triable issue of fact and demonstrated an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586.  The non-moving party must go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law.  It is on this standard that the Court has reviewed the Defendants' Summary Judgment Motion and the Plaintiff's Response.

**II. Background - Material Facts**

The following material facts are not in dispute and have been taken directly from the parties' Joint Concise Statement of Material Facts.

In 2011, Plaintiff worked for Defendant ClubCom, LLC, a subsidiary of Defendant Zoom Media Corporation. Doc. No. 60, ¶¶ 1-3. While working for Defendants, Plaintiff's title was "local data entry sales employee" and her primary job duty was to input data from advertising sales contracts into Defendants' computer system. Id. ¶ 4. Plaintiff's employment with Defendants began in February of 2011 and ended on September 13, 2011, when Plaintiff resigned from the company. Id. ¶ 6.

Plaintiff does not have a learning disability. Id. ¶¶ 10, 30. Plaintiff claims that she learned from one co-worker that another co-worker -- Sarah O'Toole -- called her a "freakin' retard," a fact which O'Toole, the alleged speaker, denied shortly after O'Toole and Plaintiff had a disagreement on or about August 24 and 25, 2011, over a sales contract. Id. ¶¶ 12, 17. Plaintiff said that she was offended by this term because her father's second cousin has Down Syndrome and her niece has Asperger's Disorder. Id. ¶ 30.

O'Toole was not Plaintiff's supervisor, O'Toole did not supervise Plaintiff in any way, Plaintiff and O'Toole did not share a supervisor, and O'Toole was physically located on the opposite side of building from Plaintiff. Id. ¶¶ 13-15. Plaintiff's interactions with O'Toole occurred on an as-needed basis, when questions arose pertaining to information contained in the contracts that Plaintiff was to input into the data entry system. Id. ¶ 16.

The dispute between Plaintiff and O'Toole arose over a sales contract obtained by a sales representative. Id. ¶ 17. The sales representative had instructed that someone from O'Toole's department was to contact him when the sales contract arrived at Defendants' place of business,

but when Defendants' receptionist opened the package containing the sales contract, she gave it directly to Plaintiff so she could input the contract data into Defendants' computer system. Id. ¶¶ 18-20. When employees from O'Toole's department went looking for what they thought was a "missing" contract, they eventually determined the receptionist had failed to deliver it to them. Id. ¶¶ 21-22.

Plaintiff overheard some form of disagreement between the receptionist and the employees from O'Toole's department, and later, she and the receptionist met with Plaintiff's supervisor, John Lapcevic, and discussed the issue related to the sales contract. Id. ¶¶ 23-24. Plaintiff's supervisor told Plaintiff that he would handle the matter. Id. ¶ 25. Also, at some later point in time, the receptionist asked O'Toole if O'Toole was angry with her over the subject contract issue, and, according the receptionist, O'Toole answered in the negative, stating, "No, I think you are being paranoid. I'm not mad at you. We're made [sic] at Gina for being retarded." Id. ¶ 26.

A day after speaking to O'Toole concerning the contract issue, the receptionist told Plaintiff that O'Toole said the following, "It is not you [the receptionist] that I am mad at. It is Gina, that freaking retard." Id. ¶ 28.[2] Plaintiff and the receptionist reported O'Toole's use of the pejorative term to Lapcevic, Plaintiff's supervisor. Id. at ¶ 31.[3] Neither party has proffered any further evidence that Plaintiff ever again complained to any of Defendants' management-level employees about O'Toole's conduct.

---

[2] During discovery each of the above individuals was deposed. O'Toole denied using the term "retard" and instead testified that she recalled referring to Plaintiff as a "bitch." Id. at ¶ 29. The receptionist testified that she recalled O'Toole saying Plaintiff was "being retarded" for reporting a computer problem to Lapcevic. Id. Plaintiff expressed uncertainty as to the exact pejorative term that the receptionist told her O'Toole used. Id.

[3] During his deposition, Lapcevic testified that he did not recall Plaintiff complaining to him about O'Toole's use of the term "freaking retard."

Subsequent to the receptionist and Plaintiff's meeting with Lapcevic, Plaintiff sent him an email which stated, "After our meeting with [the receptionist], I don't think I need to talk to you about any further issues. It's not worth it at this point. Thanks for listening." Id. at ¶ 34.

Thereafter, Plaintiff asked O'Toole if O'Toole had called her a "freaking retard." Id. at ¶ 36. In addition, Lapcevic contacted Defendants' COO, Marc Farber, regarding the conflict between the receptionist and O'Toole. Id. at ¶ 38. A meeting was held among the receptionist, her supervisor, O'Toole, her supervisor and others, but Plaintiff was not present at that meeting. Id. ¶ 38-41.

On September 13, 2011 – the day Plaintiff resigned – O'Toole sent Plaintiff a contract number which Plaintiff had requested from another employee. Id. ¶ 46.[4]

**III. Discussion**

The ADA[5] prohibits employers from discriminating against those individuals who possess "qualified disabilities." 42 U.S.C. §12112. The ADA defines disability as follows:

> The term "disability" means, with respect to an individual –
>
>> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>>
>> (B) a record of such an impairment; or
>>
>> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C.A. § 12102 (1).

---

[4] The contract number was sent to Plaintiff within four minutes of her having made the request of the other worker. See doc. no. 37-2.

[5] The legal standards set forth above also apply to Plaintiff's claims brought pursuant to the Pennsylvania Human Relations Act ("PHRA"). See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

Here, Plaintiff has admitted that she does not have a "mental impairment that substantially limits one or more major life activities," and she does not contend that there is a record of her having such an impairment. Plaintiff admits that the only way that she can meet her burden of proving that she has a disability, and thus, has a viable claim under the ADA, would be if she was <u>regarded</u> as having a mental impairment.

Case law established by United States Court of Appeals for the Third Circuit has determined that in order to be "regarded" as having a mental impairment, a plaintiff must prove that: (1) the defendants mistakenly believed that he had an impairment, or that (2) the plaintiff had a non-limiting impairment that the defendants mistakenly believed substantially limited a major life activity. *See Rawlins v. New Jersey Transit,* 431 Fed.Appx. 145, 146-7 (3d Cir. 2011), *citing Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 514 (3d Cir. 2001).

Recently, in *Wolski v. City of Erie,* Judge McLaughlin for the United States District Court for the Western District Court summarized the law in this area as follows;

A person is regarded as having a disability if she:

>(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
>(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
>(3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment. *Hershgordon v. Pathmark Stores, Inc.*, 285 Fed. Appx. 846, 848 (3d Cir. 2008) (*quoting Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999)).
>
>If a plaintiff is attempting to establish that the employer believed her to be substantially limited in the life activity of working, then the plaintiff must establish that the employer believed her to be limited in her ability to work in either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. See

> *Hershgordon*, 285 Fed. Appx. at 848 (*quoting Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)); *Tice v. Centre Area Transp. Authority*, 247 F.3d 506, 514 (3d Cir. 2001) (citing authority). See also 29 C.F.R. § 1630.2(j)(3)(i) (2008) (stating that an individual is substantially limited with regard to working if there is a significant restriction in a person's ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.).

Wolski, ___ F.Supp. ___, 2012 WL 4499305, *10 (W.D.Pa. Sept, 12, 2012).

As noted above, although the evidence presented here must be construed in a light most favorable to Plaintiff as the non-moving party, Plaintiff bears the burden of pointing to specific, record facts which demonstrate a genuine dispute.  Based upon all of the above-cited case law, Plaintiff must prove that ***her employer*** believed she was disabled or limited in her ability to work.

In the instant case, Plaintiff points to evidence that a ***co-worker*** used a pejorative term with respect to Plaintiff on at least one occasion.  There is no dispute among the parties that name-calling that ensued did not involve management personnel and took place subsequent to a work-related argument among Defendants' receptionist, Plaintiff, and employees in a different department than the one in which Plaintiff worked.  Plaintiff has failed to present any evidence which would provide even the slightest indication that her employer perceived her as mentally deficient in any way.

Despite this lack of evidence, Plaintiff contends that her ADA claim, which she framed as a hostile work environment claim, can survive Defendants' Motion for Summary Judgment.  This Court disagrees.

However, in order to establish a *prima facie* case for an ADA-hostile work environment claim, Plaintiff must first prove that she has a disability as defined above.  *See Lescoe v. Pennsylvania Dept. of Corrections-SCI Frackville*, 464 Fed.Appx. 50, 54 (3d Cir. 2012).  In

<in...

affirming the District Court's entry of summary judgment in favor of the defendants, the Court of Appeals in *Lescoe* specifically noted that the appellant (the plaintiff) had failed to establish he had a disability under the ADA.  Thus, he would not be able to legally meet his burden of proving an ADA hostile work environment claim.  See also *Ginsburg v. Aria Health Physician Services,* 2012 WL 3778110, *5 (E.D.Pa. August 31, 2012) ("Under the ADA, a plaintiff claiming a hostile work environment must show: '(1) [he] is a qualified individual with a disability under the ADA; (2)[he] was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) [his employer] knew or should have known of the harassment and failed to take prompt effective remedial action,'" *citing Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir.1999)); and *Brudnak v. Port Authority of Allegheny County,* 2012 WL 4006043, *8 (W.D.Pa. Sept. 12, 2012)("A claim for harassment based on disability, like one under Title VII, would require a showing that: (1) [plaintiff] is a qualified individual with a disability under the ADA; (2)[he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) that [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action.").

Accordingly, because a hostile work environment claim pursued under the ADA first requires the person to be disabled, and under the circumstances present here, all of Plaintiff's disability claims required her employer to "believe" or perceive she was mentally impaired, and because there is no evidence of record to support a finding that Plaintiff's employer believed

Plaintiff was mentally impaired, summary judgment will be granted in favor of Defendants with respect to Plaintiff's ADA claims.[6]

Finally, because Plaintiff's PHRA claims are tied to this Court's interpretation of the ADA claims, Plaintiff's PHRA claims will also be dismissed.  *See Kelly v. Drexel University,* 94 F.3d 102, 105  (3d Cir. 1996) (While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts).

**IV. Conclusion**

Based on the above-cited statutory and case law, Defendants' Motion for Summary Judgment will be GRANTED.  An appropriate Order of Court follows.

s/   Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All ECF Counsel of Record

---

[6] Plaintiff's Complaint also advanced an ADA-predicated retaliation claim, but Plaintiff's Opposition to the Defendants' Motion for Summary Judgment does not address the arguments raised by Defendants with respect to this claim.  Thus, it appears as though Plaintiff has abandoned that claim.  Regardless, the Court has read through the numerous appendices attached to Defendants' and Plaintiff's submissions in support of, and in opposition to, the Motion for Summary Judgment and can find no evidence which would establish a *prima facie* retaliation claim under the ADA.  Specifically, Plaintiff has failed to adduce any evidence that she was engaged in "protected employee activity" and suffered ramifications for engaging this activity.