IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GINA N. DEL TINTO,

           Plaintiff,                          12cv0070
                                           **ELECTRONICALLY FILED**

                  v.

CLUBCOM, LLC,

           Defendant.

**MEMORANDUM ORDER**

Before the Court is the matter set forth by Plaintiff in her Motion for Reconsideration (doc. no. 64), which this Court granted in part and denied in part. See Doc. Nos. 68. Plaintiff requested that the Court reconsider its prior decision granting Defendant summary judgment. Doc. Nos. 61-62. The Court agreed to specifically address the summary judgment argument raised by Defendant (and countered by Plaintiff) as to Count Two of Plaintiff's Amended Complaint. Doc. Nos. 68-69.

Whether summary judgment should be granted as to Count Two of the Amended Complaint was an issue which was fully briefed by the parties prior to Court's issuance of its prior Opinion and Order granting summary judgment (doc. nos. 61-62). See Defendant's Brief in Support of its Motion for Summary Judgment, doc. no. 39, pp. 12-15, Plaintiff's Brief in Opposition, doc. no. 44 at pp. 6-7, and Defendant's Reply Brief, doc. no. 58, at pp. 3-5. Thus, the matter is ripe for disposition by the Court.

I.       **Standard of Review**

As stated in the Court's prior Opinion (doc. no. 61), a Court must grant summary judgment, "if the movant shows that there is no genuine dispute as to any material fact and [if] the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). This determination

requires that we view the facts in the light most favorable to the nonmovant and draw all inferences in her favor. *Stratechuck v. Bd. of Educ., S. Orange–Maplewood Sch. Dist.*, 587 F.3d 597, 603 (3d Cir. 2009).

A fact is material if it "might affect the outcome of the suit under the governing law," and the dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Olivieri v. County of Bucks*, 2012 WL 5235684, *4 (3d Cir. 2012), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has properly supported its showing that there is no triable issue of fact and demonstrated an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586.  The non-moving party must go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law.  It is on this standard that the Court has reviewed the Defendants' Summary Judgment Motion and Plaintiff's Response and Defendant's Reply with respect to Count Two of the Amended Complaint.

## II.   Factual Background

According to her Amended Complaint, Plaintiff was diagnosed at some unspecified point in time with Major Depressive Disorder "as a result of the harassment she suffered[at work,]" and was allegedly terminated by her employer upon learning that she had this mental disorder. See Amended Complaint, Doc. No. 24, ¶¶ 54, 62.  The Amended Complaint specifies that Plaintiff was "scheduled to continue working until at least September 23, 2011[,]" but alleges that Defendant listed Plaintiff's separation from employment as September 15, 2011 and cancelled her health insurance as of September 16, 2011.  Id., ¶ 61.  Finally, the Amended Complaint suggests that Defendant terminated Plaintiff prior to September 23, 2011, because of her Major Depressive Disorder, and thereby violated the ADA.  Id., ¶¶ 62-63.

The parties' Joint Statement of Material Facts provides additional, uncontested, and relevant information concerning Plaintiff's separation from her employment with Defendant and it also provides a more thorough timeline of the events concerning Plaintiff's separation from employment[1]:

- On September 13, 2011, Plaintiff tendered her resignation to her supervisor, John Lapcevic, via an email, providing him with "two weeks notice."  Joint Statement of Material Facts, doc. no. 60, pp. 2 and 16, ¶¶ 6, 59;

- That same day (September 13, 2011), Lapcevic acknowledged receiving Plaintiff's resignation email.  Id., p. 16, ¶ 60;

- On September 14, 2011, Plaintiff met with Defendant's Assistant Human Resources Manager, Linh Quach, for an exit interview.  Id., p. 17, ¶¶ 65-66;

---

[1] Each of the facts set forth below have been extracted from the parties Joint Concise Statements of Facts, and the facts are uncontested and deemed to be material and relevant to the issue at bar.

- During her September 14, 2011 meeting with Quach, Plaintiff requested that Friday, September 16, 2011, be her last of work as opposed to September 23, 2011, and Quach memorialized her desire that Plaintiff's request be honored in this regard, making Friday, September 16, 2011, her last day of employment with Defendant.  Id., pp. 28-29, ¶ 10;

- Following her September 14, 2011 meeting with Quach, Plaintiff also emailed Lapcevic, requesting that Defendant move up her last day of work to Friday, September 16, 2011. Id., p. 18, ¶ 70;

- On September 16, 2011, Plaintiff failed to report for work.  Id., p. 19, ¶ 75;

- Plaintiff began to attempt to commit suicide after work hours on September 15, 2011. Id., p. 19, ¶ 78;

- No one was aware of Plaintiff's suicidal actions until Plaintiff called her mother at approximately 6:30 p.m. on September 16, 2011.  Id., p. 19, ¶ 78;

- During the September 16, 2011 call with Plaintiff, Plaintiff's mother learned that Plaintiff had quit her job, and her mother attempted to contact Lapcevic to get Plaintiff's job back, but could not reach Lapcevic.  Id., p. 20, ¶ 80;

- Lapcevic and Quach first became aware of Plaintiff's suicide attempt on Monday, September 19, 2011, through communications from Plaintiff's mother.  Id., p. 21, ¶¶ 85, 87;

- At no point in time following her resignation, did Plaintiff instruct her mother to contact Defendant in an attempt to get her job back.  Id., p. 22, ¶ 91;

- Plaintiff's health insurance benefits were terminated effective September 15, 2011, the last day Plaintiff reported to work for Defendant.  Id, p. 42, ¶ 82[sic.]; and

- Plaintiff received short term disability benefits from Defendant through November 24, 2011.  Id., p. 42, ¶ 82.

### III.  Discussion

A plaintiff may prove wrongful termination under Title VII based upon theories of both mixed-motive and pretext. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989) (mixed-motive cases require direct evidence); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (pretext cases involve circumstantial evidence). These two distinct frameworks, developed in the context of Title VII actions, have also been applied to PHRA, ADA, and ADEA claims.  See *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir. 1995) ("[T]he ADA, ADEA and Title VII all serve the same purpose-to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well.").[2]

The Court must analyze a pretext claim using the tripartite burden-shifting formula set forth in *McDonnell Douglas*.  To do this, a plaintiff must first establish a *prima facie* case of discrimination.  See, *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir.1999) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted)). "While the burden of production may shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Id*.

A *prima facie* case of discrimination under the ADA requires a plaintiff to prove three elements: (1) that she has a "disability" within the meaning of the ADA; (2) that she was qualified for the position, with or without accommodation; and (3) that she was subjected to an

---

[2] Because the facts as pled by Plaintiff suggest the application of a pretextual theory, the Court will not discuss an ADA discriminatory termination claim under a mixed motive theory.

adverse employment decision as a result of discrimination.  *Shaner v. Synthes,* 204 F.3d 494, 500

(3d Cir. 2000).  The *prima facie* case is not intended to be rigidly applied or difficult to prove.

*Equal Employment Opportunity Comm'n v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir.1990);

see also *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3rd Cir.1999) (the prima facie case

"is merely a sensible, orderly way to evaluate the evidence in light of common experience as it

bears on the critical question of discrimination").

The Court in its prior Opinion (doc. no. 61) noted that Plaintiff admitted that she did not

have a learning disability that she reported to her employer at the time she was taunted by a co-

worker.  See Doc. No. 61, p. 5.  Thus, Plaintiff's ADA discriminatory termination claim cannot

be predicated upon a learning disability.

However, Count Two of Plaintiff's Amended Complaint implies that she was employed

by Defendant at the time she was diagnosed with Major Depressive Disorder, that her employer

knew about this mental disability, and discharged her because of it.  Doc. No. 24, ¶¶ 53-64.

However, the record (and Plaintiff's argument in her Brief in Opposition) does not support

Plaintiff's proposition in this regard.

As noted above, in order to support a *prima facie* case for discrimination under the ADA,

Plaintiff here must prove three elements: (1) that she has a "disability" within the meaning of the

ADA; (2) that she was qualified for the position, with or without accommodation; and (3) that

she was subjected to an adverse employment decision as a result of discrimination.

As noted in the Court's prior Opinion, the ADA defines disability as "(A) a physical or

mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or (C) being regarded as having such an impairment (as

described in paragraph (3))."  42 U.S.C.A. § 12102 (1).

Based on the above citations to the record (see "Section II. Factual Background," above), and construing all evidence presented in a light most favorable to Plaintiff (the non-moving party), the Court finds that there is no question of material fact that: (1) Plaintiff, not Defendant, severed her employment with Defendant, and (2) that Plaintiff's last day of employment was either September 15, 2011 or September 16, 2011.

It is uncontested that Plaintiff resigned her employment on September 13, 2011, and then requested that September 16, 2011 be her last day of work, as opposed to September 23, 2011. Thus, the only question is whether there is a dispute of fact that a jury must decide as to Plaintiff's last day of employment.

However, it is uncontested that Defendant (Quach and Lapcevic) did not learn about Plaintiff's suicide attempt until September 19, 2011, three or four days subsequent to Plaintiff's last day of work, Defendant certainly cannot be said to have discharged Plaintiff as a result of a mental or emotional disorder.

Moreover, there is no question that Plaintiff's Major Depressive Disorder was not diagnosed by a medical professional until some point in time after she went to the hospital. There is no evidence of record as to when that diagnosis was actually made. However, there is no dispute that the first time Plaintiff went to the hospital was on September 16, 2011, at some point after 6 p.m. Accordingly, her employer could not have been, and was not made, aware of her Major Depressive Disorder until _after_ Plaintiff's employment with Defendant ceased. Thus, it is not possible to prove that Defendant knew Plaintiff suffered from Major Depressive Disorder on the last day of her employment with Defendant.

In sum, the Court finds (and reiterates) that Plaintiff did not possess a "disability," as that term is defined by the ADA, on or before the date that her employment ended with Defendant.

The evidence of record construed in a light most favorable to Plaintiff indicates Plaintiff resigned, and it was she who requested that September 16, 2012, be her last day of employment. Her suicide attempt was not known to Defendant until some tie on September 19, 2011 three or four days after her last day of employment with Defendant.   Accordingly, Defendant's Motion for Summary Judgment will be granted as to Count Two, which was a claim for discriminatory termination under the ADA.

## IV. Conclusion

Based on the above, Defendants' Motion for Summary Judgment will be GRANTED as to Count Two.

## ORDER

AND NOW, this 7th day of December, 2012, upon Reconsideration of Defendant's Motion for Summary Judgment as to Count Two of Plaintiff's Amended Complaint, the Court GRANTS said Motion.

s/   Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record